Jvaos íMaesdai.i.
delivered the opinion of the Court.
To a petition brought by Hix against E. Bevil and two others, on a note for $65, the defendants pleaded three pleas, each relying upon the defence more specially set forth in the third, which presents, in substance, the following facts:
That in 1849, while the election of delegates to the late constitutional convention in this State wras pending, and Barlow and Pendergrast were candidates for the office of delegate in Monroe county, the plaintiff, Hix, delivered a horse to the defendant, E. Bevil, upon an agreement then made between them, that Bevil should pay for the horse one dollar for every vote that Barlow *141 should beat his opponent; that is, as many dollars as the number of votes given for Barlow, should exceed the number given for Pendergrast, and that Bevil executed and delivered to Hix a written obligation to that effect; that at the election Barlow received a majority of more than 300 votes, over and above the number received by his said opponent, and that afterwards Bevil re-delivered to Hix, and he received the horse, and surrendered the writing aforesaid to Bevil, who thereupon, in consideration of the premises, and upon no other consideration, executed to Hix the note for $65, with the other defendants as his sureties therein.
It is not necessary to constitute a bet that the hazard should be equal on both, sides. PI sold a horse to B, to be* paid for after the-election of members to the Convention, B to pay $>1 for every vote.that one of two»* candidates sho’d get more than the othe 15, but if the one was beat en in the election nothing was to he paid: Held, that this, was substantially a betting, and a note given upon a compromise by J3 to H for money upon no other consideration, could not be re«covered.
Demurrers to each of these pleas were sustained, and a judgment for the amount of the note rendered against the defendants, who prosecute this writ of error for its reversal.
Confining our attention to the third plea, we are of opinion that although the horse was to remain the property of Bevil, whatever might be the result of the election, yet the price of the horse was hazarded, and in effect bet upon the election, since the result, which was uncertain, might be such that Bevil might have to ■pay nothing, or but a trifle for the horse, and Hix would lose the whole or the greater part of his value, or it might be such that Bevil would, according to the agreement, be bound to pay several times the value, which would be a corresponding gain to Hix.' It is not necessary, in order to constitute a bet, that the hazard of loss should be equal on both sides, or that the amount hazarded should be equal. It is no objection, therefore, to considering this a bet, that Hix could not lose more than the value of his horse. He put that to hazard for the chance of gaining by the event a larger sum, while Bevil, for the chance of gaining the value of the horse, or apart of it, risked a larger sum, proportioned to the excess of Barlow’s majority over the number of dollars which the horse was really worth. This was substantially a bet, and can.scarcely claim to have been a device to avoid the appearance or character of a. bet. And we think it entirely clear,, upon the face of the plea,, that *142 the re-delivery of the horse, and the execution of the note for $65, was a composition by which the horse and $C5 note, were received in lieu of upwards of $300, which might have been demanded. If this was not. the case, there was no consideration for the note.
Tho belting on elect'onsof mem bers to the Convention may not have been specially provided for by statute, fit no penalty attached to the ant it is against the policy of the law and the Courts will not _ lend their aid in the Ciilection ol notes founded upon such consideration.
But the horse was re-delivered, and the note executed in consideration of the surrender by Hix of his claim to more than $300, won by the bet or wager upon Barlow’s majority. If this bet was illegal, then the claim of Hix growing out of it, was also illegal. And not only was it not enforcible by suit, but having been won upon or at a hazard, even so much of it as may have been actually paid, might be recovered back, if the hazard of an election be embraced within the term hazard, as used in the act of 1833: (Stat. Law, 758; McKinney vs Pope's adm'r., 3 B. Monroe, 93; Lytle vs Lindsey, Ibid, 125.) And a change of the transaction, by which a note is given by the loser in lieu of the thing lost, does not change the character or principle of the case. Brown vs Watson, (6 B. Monroe, 589.)
The case of Graves vs Ford, (3 B. Monroe, 113,) however, decides that the term hazard, as used in the act of 1833, does not embrace elections, and therefore, tnat tne remedies given by that act, or founded on its principles, do not apply to bets or wagers made upon elections. And it seems that there is no statute denouncing a penalty for betting on the election of delegates to the Convention. ¡Still, as it is obvious that such bets have the same evil tendency as bets made upon the election of other officers, they do not become legal or entitled to the protection of the law, because they are not specially denounced by statute. The only consequence of the omission is, that they are not subject to the penalty. The illegality of such wagers does not arise solely from their being expressly denounced by statute, and subjected to a penalty or forfeiture, but also from their being against public policy, from the:r direct tendency to interfere with the proper exercise of the elective right, and to corrupt our institutions in their *143 most important element. Such a contract is essentially vicious and illegal, without any statutory denunciation The penalties denounced against wagers upon all ordinary elections, evince the legislative sense of their illegality. The omission to extend the penalty by special act to the case of an election which has occurred but once in fifty years, does not relieve a wager upon that election from the character of illegality, which its effects upon the public interest and safety impress upon it.
Then, although the loser might not be authorized to recover back at law or in equity, money or property which he had voluntarily paid upon this illegal wager, he may, on well settled principles, resist and defeat a recovery against himself, by showing that the claim asserted is founded on an illegal consideration, or is part of an illegal transaction, and inseparable from it. The Courts will not and should not lend the aid of the law for the enforcement of a coutract, the object and effect of which is to violate the law, and to affect injuriously the public interests. And to avoid being made the instruments of effectuating contracts which are destructive of the objects and policy of the Jaw, Courts allow the party sued, though particeps criminis, to show and rely upon the illegality of the demand, as an effectual defence. In pari delicio potior est conditio defendentis.
We are of opinion, therefore, that the third plea presents a sufficient bar to the action, and should have been held on the demurrer.
The bill of discovery, seeking a disclosure from the plaintiff in this case, does not seem to be properly before us on this writ of error. And we only remark that its dismissal on demurrer, will be no bar to the presentation of a similar bill, when the cause is re-instated on the docket, under this opinion, if the facts alleged in the third plea, should be denied by the replication.
Wherefore, the judgment is reversed, and the cause remanded, with directions to overrule the demurrer to the third plea of the defendants, and for further proceedings.
Ellis and Kellie for plaintiff; B. Monroe, Gorin and Rogers for defendants.